671 So.2d 1195 (1996)
Mildred Marie BROWN, Individually and as Duly Appointed Natural Tutrix of the Minor, Jermaine Quintez Brown, Plaintiff-Appellant,
v.
UNITED STATES FIRE INSURANCE CO., et al., Defendants-Appellees.
No. 28,181-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1996.
Writ Denied June 7, 1996.
*1196 Sedric E. Banks, Monroe, Michael E. Kramer, Winnsboro, for Appellant.
John Barkley Knight, Jr., Winnsboro, Davenport, Files & Kelly, L.L.P. by Michael J. Fontenot, Monroe, for Appellees.
Before NORRIS, WILLIAMS and GASKINS, JJ.
GASKINS, Judge.
The grandmother/tutrix of a child, who was severely injured when he ran into the path of a school bus, appeals from a trial court judgment which ruled in favor of the defendants on the basis of the unavoidable accident doctrine. For the reasons set forth below, we affirm.

FACTS
In April 1988, five-year-old Jermaine Brown and his 10-year-old brother Elvis Brown lived with their maternal grandmother, Bessie Mae Brown, and their aunt, Robin Brown, on Kansas Street in Wisner, Louisiana. The houses on Kansas Street are located close to the roadway, which is narrow. The Brown residence is directly across the street from the home of the Dorsey family.
Jermaine and Elvis routinely rode a Franklin Parish school bus which picked them up and dropped them off in front of their grandmother's house. The bus was owned and driven by Ed Douglas, Jr.
On the afternoon of April 28, 1988, Mr. Douglas drove Jermaine and Elvis home on the school bus. The boys exited the bus, with Elvis holding his younger brother's hand. At this time, their aunt Robin was in the vicinity of the Dorsey house. Their grandmother, Mrs. Brown, heard the bus horn and came to the front door of her house to receive the children.
Mr. Douglas had a brief conversation with Robin Brown as the boys exited the bus. As he prepared to depart, Mr. Douglas honked his horn again, then looked to his left and saw the boys going up the steps at their grandmother's house.
Suddenly, Jermaine bit his brother's hand and darted toward the street. (There was speculation that the child was running toward his aunt who was still across the street in the Dorseys' yard.) In response to the child's action, Mrs. Brown hollered. However, the bus was already in motion. The child was struck by the front left fender of the bus. According to the evidence, the point of impact was on the far edge of the fender, close to the tire well. As a result of his injuries, Jermaine is now a paraplegic.
Suit was originally brought by Mildred Marie Brown, Jermaine's mother. However, Bessie Mae Brown subsequently replaced her daughter as Jermaine's tutrix and as the proper party plaintiff in the instant suit. Named as defendants were Mr. Douglas; his *1197 employer, the Franklin Parish School Board; and his vehicle insurer, United States Fire Insurance Company.
Bench trial was held in February 1995. In written reasons issued in May 1995, the trial court ruled in favor the defendants. The court found that Mr. Douglas determined that the boys and their grandmother were on the steps of their house before driving off. According to the testimony of Jermaine's grandmother and brother, the only witnesses who actually saw the accident, the bus was already in motion when Jermaine bit his brother and ran toward the street. The court stated that Mr. Douglas could not be expected to maintain his view of Jermaine as he drove forward and that Mr. Douglas could only reasonably assume that the child would remain on the porch with the grandmother and brother. It concluded that the accident was unavoidable and thus found that Mr. Douglas was free from fault.
The plaintiff appealed.

UNAVOIDABLE ACCIDENT
The plaintiff contends that the trial court erred in applying the doctrine of unavoidable accident to preclude recovery.

Law
In Scardina v. State Farm Mutual Automobile Insurance Company, 597 So.2d 1148, 1150 (La.1992), writ denied, 604 So.2d 1004 (La.1992), the court concisely explained a motorist's duty of care when driving near children and the unavoidable accident doctrine:
Although the duty of a driver charged with the knowledge of children near the roadway is heightened, the duty is not limitless. Upon seeing children near the roadside, a motorist is expected to react appropriately, but a driver does not necessarily have a duty to stop. Ordon v. Nash, 411 So.2d 1111, 1113 (La.App. 4th Cir.) writ denied, 415 So.2d 941 (La.1982). Motorists driving near children are charged with a high degree of care, but the driver is not an insurer of every child's safety. Dorsey v. Williams, 525 So.2d at 544.
When a driver has employed all reasonable precautions to avoid an accident, and a sudden act of a child creates an emergency rendering it impossible for the motorist to avoid striking the child, the accident is considered unavoidable and the motorist is not liable. Keel v. Thompson, 392 So.2d 713, 717 (La.App. 3rd Cir.1980). In other words, if a motorist is proceeding at a lawful and reasonable rate of speed, maintaining a proper lookout, and otherwise obeying the rules of the road, he will not be held liable for injuries to a child who suddenly darts or dashes into the path of his vehicle from a concealed position in such a way that an accident cannot be avoided. Keel v. Thompson, 392 So.2d at 717. See also Dorsey v. Williams, 525 So.2d at 544-45. Each case must be considered in light of its particular set of circumstances. Dorsey v. Williams, 525 So.2d at 544.
However, when children are accompanied by their parents or other adults, the degree of care diminishes because it is only reasonable for a prudent person to assume, in the absence of any indication to the contrary, that the parent or other person will guard against a childish impulse and give immediate warning of any sudden change in position which might place the child in peril. Comer v. Travelers Ins. Co., 213 La. 176, 34 So.2d 511 (1948); Brown v. Liberty Mutual Insurance Company, 234 La. 860, 101 So.2d 696 (1958). See also Welborne v. Southern Farm Bureau Insurance Company, 305 So.2d 684 (La.App. 2d Cir.1974), writ refused, 309 So.2d 352 (La.1975), and Sneed v. Satcher, 597 So.2d 1070 (La.App. 2d Cir. 1992).
The plaintiff also contends that Mr. Douglas failed to fulfill his duty as a school bus driver as delineated in Clomon v. Monroe City School Board, 490 So.2d 691 (La. App. 2d Cir.1986), after remand, 557 So.2d 1100 (La.App. 2d Cir.1990), affirmed, 572 So.2d 571 (La.1990). In that case, a motorist sought damages for her severe emotional trauma after she struck and killed a handicapped special education student who had disembarked from a school bus and was trying to cross the street alone. The court held that the special education attendant who rode the school bus failed to fulfill her specific *1198 duty to escort the child from the bus to a place of safety. The court also found that under La.R.S. 32:80, the school bus driver had a statutory duty to operate the warning signals on the school bus until the departing child had reached a place of safety and that the driver had violated that duty.
In Louisiana, school buses are considered common carriers. Consequently, their drivers owe the highest degree of care to their young passengers and are liable to them for injuries occasioned by even the slightest negligence. However, the school bus driver is not the insurer of children passengers. Robertson v. Travis, 393 So.2d 304 (La.App. 1st Cir.1980), writs denied, 397 So.2d 805, 806 (La.1981); Landry v. Travelers Indemnity Company, 155 So.2d 102 (La. App. 1st Cir.1963).
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell, supra.

Discussion
As a school bus driver, Mr. Douglas owed his young passengers the highest duty of care. However, at some point after the children disembarked from the school bus, this highest duty ceased. Under Clomon, supra, a school bus driver has a duty to operate the bus warning signals until the children reach a place of safety. We conclude that once the children passengers reach a place of safety, the school bus driver's duty becomes one of an ordinary motorist toward children.
On the day of the accident, Jermaine had safely exited the bus, crossed the street, and had actually reached a place of safety, i.e., the front steps of his grandmother's home. His older brother, Elvis, had him securely by the hand and escorted him up the steps. Their grandmother was waiting for them at the front door, and Jermaine was within an arm's reach of Mrs. Brown. Mr. Douglas, in preparation to depart, observed the location of the children and their close proximity to their grandmother. Seeing that they were in a safe location and under adult supervision, he began to drive away. As usual, he waved to Mrs. Brown.
Suddenly and without any warning, Jermaine left that place of safety, biting his brother to break Elvis' hold on him and running into the roadway, where the school bus was already in motion. He was moving so quickly that his brother, who was five years older than him, testified that he could not have possibly caught Jermaine before he reached the street. Although the testimony showed that after Jermaine began running, Mrs. Brown hollered, "Ho! Ho!", her exclamation came too late.[1] Elvis testified that the accident occurred so quickly that neither he nor his grandmother had sufficient time to shout "Stop, Jermaine!" before the child was struck. The incident was unexpected and happened, in Mrs. Brown's words, in "just a wink of the eye."
Based upon the evidence presented at trial, we are unable to conclude that the trial court was manifestly erroneous in finding that this tragic accident was unavoidable and that Mr. Douglas did not breach his duty of care. Mr. Douglas did not have a legal duty to wait until the children were inside the house before leaving. Nor was he required to postpone his departure until Mrs. Brown had physically taken hold of Jermaine. To hold the driver liable in this case would be tantamount to making him an insurer of the child's safety.

LACK OF GLOBE MIRROR
Additionally, the plaintiff contends that the school bus was defective because it lacked a globe mirror on the right side of the front fender. She argues that placement of such a mirror in that position would have prevented the present accident. However, *1199 the evidence in the record, taken as a whole, falls far short of supporting this conclusion.
Mr. Douglas' bus was equipped with one and a half foot long mirrors on each side and a globe mirror on the front left fender. The globe mirror showed the driver what was in front of the bus, approaching from the right. The plaintiff contends that if the bus had also had a globe mirror mounted on the right side, it would have shown what was in front of the bus from the left side, the direction from which Jermaine approached.
The record contains virtually no evidence to support this argument. The testimony does not establish the path taken by Jermaine or the angle at which he approached the school bus when he darted toward the street. The extent of Mrs. Brown's testimony on this issue was that Jermaine ran up to the side of the bus, while Elvis testified only that Jermaine "met" the bus. While there was testimony from Mr. Douglas as to what he could not see in the globe mirror that was mounted on the left side of the bus, there was no evidence as to what he might have been able to see in a globe mirror mounted on the right side of the bus. No expert testimony was presented on this issue.
Additionally, plaintiff's argument does not take into consideration the rapidity with which the accident obviously occurred. Even had the bus possessed a second globe mirror, it is entirely plausible that Mr. Douglas still would not have been able to avoid the accident.
Therefore, we find that the record in the instant case does not support a finding that the school bus was unreasonably dangerous because it lacked a globe mirror on the front right fender.

CONCLUSION
The judgment of the trial court is affirmed. Costs are assessed against the plaintiff.
AFFIRMED.
WILLIAMS, J., concurs in the result.
NOTES
[1] Contrary to plaintiff's assertion that Mr. Douglas recklessly ignored her warning, Mr. Douglas testified that he stopped the bus when he heard her holler. Unfortunately, Jermaine had already been hit.